Good morning, Your Honors. May it please the Court, Harini Raghupati from the Federal Defenders, on behalf of Ms. Razo. The government failed to take reasonable, competent measures to obtain the material witness's presence at Ms. Razo's retrial. Its showing of unavailability was therefore deficient. Because the admission of the videotaped depositions violated Ms. Razo's rights under the Confrontation Clause and Rule 804, and because the government concedes prejudice here, this Court should vacate Ms. Razo's convictions and remand. Is your claim that both the depositions of Bohorkis and Flores were inadequately predicated? Yes, Your Honor. Our claim is that for both witnesses. That's correct. Shall we get into the facts of that, please? Certainly. Yes. So I'll start with Ms. Bohorkis, who was the witness charged in Count 1 of the indictment. And so after the government deported her, the material witness attorney had no direct way to contact her. The material witness's cell phone had been confiscated as evidence. So the only working number they had, or the only number they had, was for her husband. However, after the first call between the material witness attorney and the husband, he had no response of information. And thereafter, his phone was disconnected, and there was a message saying it's no longer a working number. And so what the government is essentially saying here is that it can repeatedly call a number that it knows is disconnected, it knows it's not working, and that suffices to meet its constitutional obligations. Moreover, that number wasn't directly for the material witness herself, it was for her husband. And he was in Santa Maria, California. The witness had been deported to Mexico. And we know from the text, the border alert, that she hadn't reentered the United States. So the number was disconnected. It was not directly for her, and it was in a different geographical location than where she was herself. Counsel, there's a document. It's the response to the U.S.'s motion in Limoney, which says it does not appear that Ms. Hashim-Inajad ever tried to call Bohorkis directly, although it's not clear why not. Are you saying now that it's clear why not, because the government had her only phone? Is that what I heard you say? Yes, Your Honor. In the material witness attorney's declaration, which I believe is on page 76, it begins at page 76 of the record, she says that Ms. Bohorkis' cell phone had been confiscated as evidence for the trial. So when she was deported to Mexico, the government retained possession of her cell phone. So they had no direct way to phone Ms. Bohorkis. All they had was a number for her husband, who was in California. Just so I'm clear, because I have a document which has 117 in big numbers at the bottom as a declaration of Hashim-Inajad. Is there a second declaration? 117, Your Honor. There are two declarations. So the material witness attorney submitted a declaration prior to the first trial, and then prior to retrial she submitted one. So page 76 would have the other one. Correct, Your Honor. Okay. The other question I have is that in Bohorkis' ‑‑ I guess it's her deposition, which seems to be at least 556 on this. It says, and she knows how to contact you in Mexico, yes, and you promise to maintain contact with her. Is that correct? That's correct, Your Honor. So prior to the deportations of both witnesses, the government secured oral promises from them that they would return. But she also says that my attorney knows how to contact me. Correct, Your Honor. But that, I think, is belied by the attorney's declaration where she says, I don't have a phone number for her. I'm not necessarily faulting the attorney, but in terms of whether, I guess, Bohorkis was truthful in terms of her ability to be contacted. It's unclear, Your Honor. But I think, to go back to your question, Judge Bea, we focused so far on Ms. Bohorkis, and I think if this court were to find that she was not unavailable, that would actually suffice to knock out both convictions, both counts. Go ahead. The reason I say that is because she provided testimony about statements that Ms. Razo supposedly made once the material witnesses got into the Jeep. She said, Ms. Razo told me to take my booties off. Ms. Razo asked me where I'm going. What about the efforts of the U.S. attorney was inadequate? What should he have or she or he have done that they didn't do? Certainly, Your Honor. So under Rodriguez and Pena Gutierrez, which are the two cases from the circuit, the U.S. attorney should have requested that the material witness attorney send letters to the foreign addresses of both material witnesses. As I read the record, the addresses that they had from Ms. Bohorkis was a town without a street or a number. That's correct, Your Honor. That, however, sorry, I shouldn't let you finish. I apologize. And do you think that that would have been an effective way of communicating with her? Well, I do. I mean, was there any evidence that prior letters had been delivered to her when addressed so in that manner? No, Your Honor. The government hadn't made any attempts to send letters. Any other letters from her relatives addressed to her that way? Was there any evidence that that was an effective way of communicating with her? No, Your Honor. I have two responses, however, though. First, the type of address at issue here, where there's no house number and no street number, is indistinguishable from the address that was at issue in United States v. Rodriguez. There as well, the material witness address was the same number without a house number. And in that case, this court said, doubts that the address in the government's possession were sufficient for a request to be delivered are no excuse for not attempting to contact the witness at that address. Even though they may not have been able to contact her through that means, your argument is they should have at least attempted or should have given the address to the material witness attorney. Certainly, Your Honor. I think that the requirement is a reasonable, competent effort. They may have sent the letters and she may not have showed up, but at a minimum, I think they had to at least attempt to send the letters to her, especially because they had no other direct means of communicating with her. Looking at this and especially going forward, the notion of all the communications going through the attorney seems sort of interesting. Judge Wardlaw just said, well, they could have sent a letter or they could have given it. Does the government, which way does this cut? Should the government have done something independent or was it correct to not do anything and only go through the attorney? I think on this record, Your Honor, the material witness, excuse me, the prosecutor did declare that the material witness attorney preferred to communicate directly with her clients, but I think the government could have respected that attorney-client relationship and still fulfilled its Sixth Amendment obligations. We already know from the record that the prosecutor was directing, asking the attorney, can you please contact your clients? It's not much of a reach to say can you please contact them not just by phone but also by sending a letter to them, here's the address. Is there any reason to think that the attorney didn't have the same address? She did, Your Honor. That is in the record. I don't have the exact site for it. But she said she didn't? She did or didn't? She did. She did. So when they say, attorney, please get your client who has promised to come back, she could have sent the letter independently because if the government had given her the address, they would have only given her what she already had. Correct, Your Honor. She independently had it and the prosecutor likewise could have requested that she send it. I would like to reserve some time for rebuttal. So neither one of them actually mailed a letter to Bohorkes? Neither. There was no letter sent to Bohorkes. I think what Judge Boggs was asking is whose duty is it to procure the witness? It's the government's obligation. So the government has to show, the prosecutor has to show the material witnesses are unavailable. They can choose to rely on the material witness to help contact the clients, but at the end of the day it's the government's obligation. There's some discussion about ethical obligation here. Would you say the government violated any ethical obligation if they tried directly? I think there may be some ethically murky territory if the government had attempted to directly reach the clients, and the reason I say that is because the record does show that the attorney expressly said, I prefer to contact my clients directly. If there are no further questions, I'd like to reserve the remainder of my time. Thank you very much. May it please the Court. Zach Howe on behalf of the United States. First, just two points of clarification. The AUSA did give the address, or at least the town name, to the material witnesses attorney. That's at page 51 of the record. It would violate ethical rules to contact the material witnesses directly. That's California Rule of Professional Conduct 2-100A. So here I think the dispute is really over whether the AUSA should have asked the material witness attorney to send a letter, and I think in analyzing that we have to ask what would that have done, and I think we can break from that. But it seems what was done was so futile. I mean, the government confiscated her phone. They had only the phone number for the husband. They called that one. He couldn't find her. It wasn't helpful. Then they called that one again, and it was disconnected. Yet there was this address where a subpoena could have been sent. Why would sending a subpoena or asking her to reappear violate an ethical obligation? I don't think it would have violated an ethical obligation, Your Honor, but I think there's an important fact being left out here, and I assume here we're talking about Bohorquez as opposed to Flores. Yes, we are talking about Bohorquez. So when the counsel for the material witnesses was successful in reaching Flores in December 2017, she said, Have you seen Bohorquez? And Flores said, No. And that's important here because the material witnesses knew each other. They traveled to the United States together. They're from the same tiny little town. They're husbands or cousins. Yeah, but they're distinct. They're distinct in the sense that Flores had – they both said they were willing to come, but Flores had four children and one of them was ill, and, you know, she had reasons. We don't know what was going on with Bohorquez. The reason I emphasize this, though, is because if Bohorquez was, in fact, present in that town in Guero, then Flores certainly would have known about it given their very close ties. And these ties aren't disputed, by the way. If you look at page 89 of the record, all the ties I just laid out are laid out by defense counsel. So, in other words, it's simply not plausible that if Bohorquez was there, Flores would have said, No, I haven't seen her. And this is over the course of nearly four months. The deportations occurred in September of 2017. The conversation with Flores occurred in December of 2017. You used the term – I was going to see whether it was admitted or judicial notice, but this is a tiny town, so the fact that there's no street address, street number or street really is not very relevant, is it? That is, I would assume it's very likely that an attempted letter would not have been wholly futile. Do you want to argue that? Well, I don't think this is the main distinguishing factor between this case and Rodriguez, so I think there are other reasons why a letter wasn't necessary here. But I do think there are reasons to think that a letter might not have made it. In fact, if you look at pages – But it's making an effort, I guess. It's like you don't make any baskets if you don't shoot the ball. Perhaps I'm relying on my own record. I once was counsel for a campaign, and we filed with the FEC, and they said, you have not provided street numbers and addresses for the people in Sandy Hook, Kentucky. I said, sir, there are no streets in Sandy Hook, Kentucky, and they didn't prosecute us. So I think they could have. Okay, but that's not a distinction with Rodriguez. What is the distinction? So I think there are really three buckets. Number one is what happened before you even got to the depositions because in Rodriguez, counsel did not give, or the AUSA did not give, the material, witnesses, subpoenas, travel documents, parole letters. All of that happened here. They also, of course, obtained a promise to return for trial and to stay in touch with counsel. That's the first bucket. Why is that relevant? I mean, why is that a distinction that makes a meaningful difference here? Well, I think it certainly shows. I mean, it's not the effort. It's like, what is the government supposed to do? And here they had the address. They could have sent a letter. They didn't. And Rodriguez says, in this circumstance, you should. Rodriguez says that if that's all you have, then you have to at least give that information. That is all you had once you knew the phone was disconnected. I don't think so, Your Honor, because, and again, I'll break it down by each material witness. So as to Flores. It's okay. We're not even talking about Flores. Okay. Fair enough. So as to Bohorquez, what we know at the time when those calls are not reaching her is that she's not there. Because Flores has already said, she is not in Guero. I haven't seen her for this, you know, period between September 2017 and December 2017. So to send a letter would be to send a letter to someone who won't receive it. So for that reason, it was perfectly reasonable for the government not to send a letter that would never arrive or not to ask counsel to do so, rather. And just as the Supreme Court in Ohio v. Roberts said, just as this court in Dresden v. Campoy said, there will always be something else that could have been done. But at the point when you know that, in this case, sending a letter isn't going to have much effect, it's not required as part of good faith, competent efforts. So look at Ohio v. Roberts. In that case, the AUSA's last attempt to get in contact with the witness was four months before trial. But the Supreme Court said that based on the communication that counsel had had with the witness's mother, it was clear that they weren't going to get in contact with that witness. And they could have done more. The court said they could have called the witness's social worker. But there will always be more you can do. And so if it's not plausible that you're going to get in touch with them, you don't have to take a measure that isn't going to have any effect. Yeah, but you know what? If you had sent a letter, you wouldn't be here. Perhaps, Your Honor. I mean, even whether or not it got to her, if you had just sent the letter, you wouldn't have created an issue on appeal. That's certainly a fair point, Your Honor. And I think prudentially that may make fine sense. It's simply what is required as part of good faith, reasonable efforts. And here, given that letter, there really doesn't seem to be a lot of debate that it wouldn't have had much effect. It simply isn't necessary as part of good faith, reasonable efforts. Why do you say there's no debate that it wouldn't have had much effect? That might be my judgment. But your argument that it's a lower probability, but it is true that once Rodriguez comes down, I don't know what your practice is. I would think it would be a very good idea to always send letters if you've got letters. Sure. Again, the reason I'm saying this is because Flores, who would certainly know if Borges was there to receive a letter, has already said to the AUSA, I have not seen her. Seen her, but there's no indication that she's moved to Mexico City or Veracruz or anything. When did Flores say that? She says that during her deposition. Sorry, no. She says this to counsel during their conversation together. So this appears in – When? Before the first trial or before the second trial? So that was just before the first trial. It's December 2017. After the first trial, Ms. Treiser, and then you're going to retry this case. Did Flores say anything about Borges then? No. So there's like two different time periods here. How did the government meet its obligation after the first trial, before the second trial? Well, again, because it's not – you don't simply reshuffle the deck after the first trial. I mean, was the first trial mistried? Correct. Why wouldn't you try to get the witness again? Well, and efforts were made, but the reason I place so much weight – What do you mean efforts were made? The husbands were called. Flores was called again. Well, what about Borges? That's what we're talking about. Right, and they didn't have the phone for Borges because her phone broke during the travel, so she didn't have a phone. That's why they didn't have the phone number. That's at page 46 of the record. Right, but this is the one they had the address for. You had the address for. Well, and again, but given that they know she's not there, and I think your argument is – They don't know she's not going to show up. I mean, she's not there at one time, but she can come back to town. Right, and I think the point is that given that Flores has said, we know she is not there for this four-month period. But she said that before the first trial, and you didn't try again before the – you did nothing in addition after the mistrial to try to get her back for the second trial. Well, they called all the numbers that they had available. But you already knew it was disconnected, so how is that a meaningful effort? Well, they didn't know that Flores' number was connected. Well, why is – I don't understand why you keep bringing up Flores. We're talking about efforts to reach Bohorquez. So the reason I bring it up is because since they had a working number for Flores and since Flores had kept counsel apprised of whether she had seen Bohorquez, then if they were successful in reaching Flores before the second trial, they could have again asked, have you seen her this time? Has she come back yet? But they could have just sent a letter. Well, they could have asked counsel to send a letter. Again, I'm simply not sure that it would have made much difference, given what they already knew about the situation and given the efforts they had already taken. And they could have asked counsel, if you don't want to send a letter, do you have any objection that we send a letter? Well, I don't think that – I think they already knew the answer to that because the declarations for the AUSA say that counsel has already told them that this is a delicate relationship and that counsel wants to contact them directly. And the final point I'll make is there's – this court's case law, Vera Pareda and Dresby-Campoy, says that an AUSA can reasonably rely on a family member or counsel for a witness to get them there for trial. That's what the AUSA did here. Thank you. All right. Thank you very much, counsel. We had a couple minutes left. Do you have any indication that Bohorquez's counsel, if asked to contact Bohorquez by mail, would have done so? Your Honor, I don't know. All we know from the record is on page 85 of the excerpts, which says the material witness attorney preferred, due to the delicate nature of working with her clients, that she attempt to communicate directly, not with you. And do you agree when he gave a page cite that we know that the attorney, in fact, had her address? Yes, Your Honor. Okay. Thank you. The one page I wanted to point this court's attention to is page 78, and that is the material witness attorney's declaration. And she says that she talked to Ms. Flores on December 4, 2017. Retrial occurred on March 20, 2018, so there was roughly four months. in between. So even if Ms. Flores hadn't seen Ms. Bohorquez in December 2017, that doesn't mean that she may not have seen her later on. I mean, I think counsel's argument is that we know Ms. Bohorquez wasn't in this tiny town, but that communication occurred four months before retrial. And the case law is clear that the government has a duty to establish unavailability at the time of retrial, not four months ahead. If there are no further questions. Thank you. Thank you very much. Thank you very much, counsel. U.S. v. Rosso is submitted.
judges: Boggs, Wardlaw, Bea